IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MAYKEL LIMA NUNEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:26-cv-1216 (LMB/WEF) |
| | ) | |
| MARKWAYNE MULLIN, et al., | ) | |
| | ) | |
| Respondents. | ) | |

ORDER

Petitioner Maykel Lima Nunez ("Lima Nunez"), a native and citizen of Cuba, has filed a

four-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he

asserts that he has been illegally detained by the U.S. Department of Homeland Security's

("DHS") Immigration and Customs Enforcement ("ICE") agency since August 2025.

Specifically, he alleges that his characterization by DHS as an "applicant for admission"

pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C.

§ 1225(b)(2), violates the Immigration and Nationality Act (Count I), his due process rights

(Counts II and III), and the Administrative Procedure Act (Count IV).

Lima Nunez is currently detained at the Farmville Detention Center, which is within this

Court's jurisdiction and the basis upon which he is suing Jeffrey Crawford, the warden of the

Farmville Detention Center. Lima Nunez has also sued Markwayne Mullin, the DHS Secretary;

Todd Lyons, the Acting Director of ICE; Russell Hott, the Director of the Washington ICE Field

Office; and Todd Blanche, the Acting Attorney General (collectively, "the federal respondents").

For the reasons discussed in this Order, the Court finds that, although Lima Nunez is detained

pursuant to 8 U.S.C. § 1225(b)(2), due process demands that he receive an individualized bond

hearing. Accordingly, his Petition will be granted in part, and the federal respondents will be ordered to release him from custody immediately and provide him with an individualized bond hearing before an Immigration Judge.

I.

The following facts are undisputed. Lima Nunez was born in Cuba in January 1982. [Dkt. No. 1] at ¶ 29. On December 10, 2022, after escaping from Cuba, he crossed the border from Mexico into the United States. Id. ¶ 30. Upon arrival, he was encountered by border patrol agents who brought him to a processing center and subsequently paroled him into the United States under 8 U.S.C. § 1182(d)(5)(A). Id. ¶¶ 30, 129. Lima Nunez made his way to Virginia, where a family friend was living. Id. When he arrived in Virginia, he attended his first check-in appointment at the Washington ICE Field Office in Chantilly. Id. He was told that he would be given an update later. Id.

On June 7, 2023, ICE mailed to an address associated with Lima Nunez a Notice to Appear that charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), [Dkt. No. 1-5]; however, Lima Nunez did not receive the Notice to Appear because he was "homeless and unable to receive mail," [Dkt. No. 1] at ¶ 31. Because he did not appear at the December 12, 2023 master calendar hearing, an Immigration Judge ordered Lima Nunez removed in absentia. Id. ¶ 32. In February 2024, Lima Nunez went back to the Washington ICE Field Office to ask for an update. Id. ¶ 33. ICE did not take Lima Nunez into custody but released him under an order of supervision, which included requirements that he wear an ankle monitor and appear at a future check-in appointment. Id. Lima Nunez subsequently attended several ICE check-in appointments, and his ankle monitor was eventually removed. Id.

In August 2025, Lima Nunez was walking to a store to get food when he was arrested by ICE officers. Id. ¶ 34. This was the first time he learned of the 2023 removal order. Id. Once in ICE custody, Lima Nunez "was transferred to Caroline Detention Facility in Virginia for less than a day, a facility in Louisiana for around 20 days, a facility in Ohio for about two days, back to Caroline Detention Facility for around a month, to a different facility in Louisiana for around a month, then to Riverside Regional Jail in Virginia for two days, and finally Farmville Detention Facility where [sic] has remained since." Id. ¶ 35. While detained, Lima Nunez's former attorney filed an emergency motion to rescind the 2023 removal order and reopen his immigration proceedings. Id. ¶ 36. That motion was granted by an Immigration Judge on September 7, 2025. [Dkt. No. 1-6]. With the help of a friend, Lima Nunez also applied for permanent residency through the Cuban Adjustment Act; however, because he was in custody, he was unable to attend a biometrics appointment, which was required for his application. Id. ¶¶ 37–39.

On March 10, 2026, an Immigration Judge denied Lima Nunez's application for permanent residency and ordered him removed to Cuba. [Dkt. No. 4-3]. According to the federal respondents, on March 19, 2026, Lima Nunez "was accepted by the Cuban Government for a flight scheduled to depart April 16, 2026." [Dkt. No. 4-1] at ¶ 11. On March 24, 2026, Lima Nunez filed an appeal with the Board of Immigration Appeals ("BIA"). Id. ¶ 12.

Lima Nunez filed his Petition for Writ of Habeas Corpus on May 7, 2026. [Dkt. No. 1]. The Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to show cause as to why the Petition should not be granted. [Dkt. No. 2]. The federal respondents have filed an opposition, [Dkt. No. 4], and Lima Nunez has filed a reply, [Dkt. No.

3

5]. Finding that oral argument will not assist the decisional process, the Petition will be resolved on the papers submitted.

## II.

The Court must first consider whether Lima Nunez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), as the federal respondents argue, or instead subject to discretionary detention under 8 U.S.C. § 1226(a), as Lima Nunez argues.[1] It is undisputed that border patrol agents encountered Lima Nunez shortly after he crossed the border into the United States. [Dkt. No. 1] at ¶ 30; [Dkt. No. 4-1] at ¶ 5. Because § 1225(b) governs the detention of noncitizens stopped "at the Nation's borders and ports of entry," Jennings v. Rodriguez, 583 U.S. 281, 287 (2018), Lima Nunez is detained pursuant to § 1225(b).

That Lima Nunez was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A) does not mean that he is now detained under 8 U.S.C. § 1226(a). Section 1182(d)(5)(A) explicitly states that a noncitizen's release on parole "shall not be regarded as an admission of the alien." Rather, the statute provides that once parole is lawfully revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). In other words, § 1182(d)(5)(A) "permits a non-citizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen as if stopped at the border." Martinez v. Hyde, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (cleaned up). Here, although Lima Nunez was paroled into the United States shortly after

---

[1] Because Lima Nunez has appealed the removal order, Lima Nunez is not detained under 8 U.S.C. § 1231(a)(2), and the proper inquiry is whether he is subject to detention under §§ 1225(b)(2) or 1226(a). See 8 U.S.C. § 1225(b)(2)(A) (stating that a noncitizen who has been detained at the border "shall be detained for a proceeding under section 1229a of this title"); 8 U.S.C. § 1226(a) (providing that a noncitizen present in the United States "may be . . . detained pending a decision on whether the alien is to be removed from the United States").

being arrested by border patrol agents, his parole terminated when an Immigration Judge ordered him removed in absentia in December 2023. In sum, that Lima Nunez was paroled into the United States does not demonstrate that he is now entitled to a bond hearing under § 1226(a).[2]

As to Lima Nunez's due process claim, the Court recognizes that, even in the context of mandatory detention, "courts have found that prolonged detention without a proper bond hearing can violate due process." Olaya Rodriguez, 2025 WL 2490670, at *3; see Mbalivoto v. Holt, 527 F. Supp. 3d 838, 847 (E.D. Va. 2020) ("[A]t some point immigration detention becomes unreasonable and therefore unconstitutional."). In evaluating whether ongoing detention under § 1225(b)(2) without a bond hearing violates due process, the "duration of detention" is "the most important" consideration. Portillo v. Hott, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018). As this Court explained in Portillo:

> Although the duration inquiry does not admit of hard and fast parameters, courts seem to agree that the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past the one and a half month average and five month maximum thresholds cited by the Supreme Court in Demore v. Kim. This approach also aligns with the concerns expressed in Zadvydas v. Davis about detention in excess of six months.

Id. (cleaned up). Here, Lima Nunez has been detained for approximately 10 months. Because this amount of time exceeds the limits articulated in Demore and Zadvydas, the Court finds that Lima Nunez's continued detention without an individualized bond hearing is unreasonable and violates due process. Accord Mauricio-Vasquez v. Crawford, No. 1:16-cv-01422, 2017 WL 1476349, at *4 (E.D. Va. Apr. 24, 2017) (fifteen months); Mbalivoto, 527 F. Supp. 3d at 850 (twenty-two months); Songlin v. Crawford, No. 3:19-cv-895, 2020 WL 5240580, at *7 (E.D. Va.

---

[2] ICE's decision to release Lima Nunez on an order of supervision in February 2024 also does not alter the analysis because a noncitizen subject to a final order of removal may be released on an order of supervision pending his removal from the United States. 8 C.F.R. § 241.5.

Sept. 2, 2020) (sixteen months); Abreu v. Crawford, No. 1:24-cv-01782, 2025 WL 51475, at *5 (E.D. Va. Jan. 8, 2025) (twenty-five, seventeen, and thirteen months).

The "likelihood that the government will secure a final order of removal," which was another factor considered in Portillo, 322 F. Supp. 3d at 707, supports the Court's conclusion that due process entitles Lima Nunez to an individualized bond hearing. Although an Immigration Judge denied Lima Nunez's application for permanent residency and ordered him removed to Cuba, Lima Nunez has appealed that decision to the BIA, and it remains "purely speculative" what the BIA will do and when it will issue its decision. Mauricio-Vasquez, 2017 WL 1476349, at *4; Abreu, 2025 WL 51475, at *6.

Finally, the Court finds relevant Lima Nunez's efforts to comply with ICE's conditions of release—efforts that demonstrate that Lima Nunez does not present a risk of flight. For instance, in February 2024, Lima Nunez visited the Washington ICE Field Office to ask for an update. [Dkt. No. 1] at ¶ 33. When he was told to wear an ankle monitor and attend future check-in appointments, he fully complied. Id. Moreover, ICE eventually removed the ankle monitor, id., demonstrating that ICE itself does not view Lima Nunez as a significant flight risk. For all these reasons, and "in light of the ongoing infringement of [Lima Nunez's] liberty interest," Portillo, 322 F. Supp. 3d at 709, the Court finds that Lima Nunez's continued detention without an individualized bond hearing before an Immigration Judge violates due process.

### III.

For the reasons stated above, Lima Nunez's Petition, [Dkt. No. 1], is GRANTED IN PART, and it is hereby

ORDERED that Lima Nunez be promptly released from custody, with all his personal property, in order to appear at a bond hearing before an Immigration Judge; and it is further

ORDERED that respondents provide Lima Nunez with an individualized bond hearing before an Immigration Judge within 14 days of the date of this Order. At the bond hearing, the parties must be "subject to the same burden and standard of proof as the agency would apply in a bond hearing for an alien detained pursuant to 8 U.S.C. § 1226(a)." Mauricio-Vasquez, 2017 WL 1476349, at *6; and it is further

ORDERED that if Lima Nunez is released on bond, respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Lima Nunez unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of his release; (3) he fails to attend a properly noticed immigration hearing; or (4) the order of removal becomes final.

The Clerk is directed to enter judgment in Lima Nunez's favor pursuant to Federal Rule of Civil Procedure 58, forward a copy of this Order to counsel of record, and close this civil action.

Entered this 2nd day of June, 2026.

Alexandria, Virginia

_____/s/_____
Leonie M. Brinkema
United States District Judge

7